**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **JOVELISSE VÁZQUEZ ORTIZ** | CIVIL NO. |
| Plaintiff, | RE: FAMILIES FIRST CORONAVIRUS RESPONSE ACT (FFCRA); DISCRIMINATION SEXUAL HARASSMENT; CONSTRUCTIVE DISCHARGE; RETALIATION; AND OTHER DAMAGES |
| vs. | |
| **ONE TO SEVEN, INC.; TOMAS PADILLA; ABC INSURANCE COMPANIES, DEF UNKNOWN DEFENDANTS** | |
| Defendants. | PLAINTIFF DEMANDS TRIAL BY JURY |

# C O M P L A I N T

**TO THE HONORABLE COURT:**

 **COMES NOW** Plaintiff Jovelisse Vázquez Ortiz ("Vázquez"), through her undersigned counsel and very respectfully **ALLEGES, SOLICITS** and **PRAYS**:

## I. NATURE OF THE ACTION AND JURISDICTION

 1. Plaintiff Vázquez invokes this Honorable Court's federal question subject matter jurisdiction under 28 U.S.C. § 1331 for this action seeking compensatory damages, equitable and injunctive relief, costs and attorney's fees brought forth pursuant to the Families First Coronavirus Response Act of 2020 ("FFCRA"), Public Law No. 116–127 (March 8, 2020), 134 STAT. 182, which amended the Family Medical Leave Act of 1993 ("FMLA") (29 U.S.C. 2611 *et seq*.)  The FFCRA became federal law due to the public health emergency resulting from the COVID-19 pandemic.

 2. Through the FFCRA, Congress further enacted into law the Emergency Family and Medical Leave Expansion Act ("EFMLEA"), 29 U.S.C. § 260, which amends the FMLA.   Plaintiff

Vázquez further invokes this Honorable Court's federal question subject matter jurisdiction under both EFMLEA and FMLA.

3.      Plaintiff Vázquez seeks judicial redress due to Defendant One to Seven, Inc.'s, violations to the EFMLA and FMLA provisions involving the Public Health Emergency Leave requirements and for One to Seven's engaging in retaliatory acts against Vázquez because she exercised her statutory rights under such federal laws.

4.      Plaintiff Vázquez further seeks redress under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2653, for defendant One to Seven, Inc.'s breach of such statute.

5.      Plaintiff Vázquez further invokes this Honorable Court's pendent/supplemental jurisdiction for defendants' continuous unlawful employment practices (un-welcomed sexual harassment, hostile work environment, and retaliation) against Vázquez which lead to multiple continuous violations of Vázquez' civil rights due to her gender and because she engaged in statutorily protected activity under such Puerto Rico laws that she has invoked herein.

6.      Plaintiff Vázquez further summons this Honorable Court's pendent/supplemental jurisdiction under 28 U.S.C. § 1367 seeking redress for violations of various Puerto Rico laws, including but not limited to, Law No. 115 of December 20, 1991, 29 L.P.R.A. §§ 194a *et seq*.; Law No. 100 of June 30, 1959, 29 L.P.R.A. §§ 146 *et seq*.; Law No. 80, of May 30, 1976, 29 L.P.R.A. § 185a, as amended; Law No. 69 of July 6, 1985, 29 L.P.R.A. §§ 1322 *et seq*.; 29 L.P.R.A. §§ 185a-185l; Law No. 17 of April 18, 1988, 29 L.P.R.A. §§ 155 *et seq*.; Law No. 180 of July 27, 1998, as amended, and Puerto Rico's Constitution, Article II, Sections 1, 8, 16, 20.

7.      Plaintiff Vázquez invokes this Honorable Court's supplemental/pendent jurisdiction under 28 U.S.C. § 1367 to hear and decide those claims arising under the Commonwealth of

Puerto Rico's Constitution and other Puerto Rico laws invoked herein because such claims arose from the same nucleus of operative facts giving rise to Plaintiff Vázquez' claims under federal law.

8.     Plaintiff Vázquez seeks redress for the damages she suffered and continues to suffer as a result of defendants' continuous unlawful employment discrimination on the basis of her sex, (hostile working environment - sexual harassment) and for their retaliation because Plaintiff Vázquez engaged in statutorily protected activity by opposing the unlawful employment practices described herein below.

9.     Defendant One to Seven, Inc.'s continuous unlawful discrimination employment practices, violations to the FFCRA, FMLA, EFMLEA and retaliations caused by Vázquez repeated engagements in statutorily protected activities created a hostile and abusive working environment for her which caused her constructive discharge from her employment.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) (1), (2).

## II.  THE PARTIES

11.     Vázquez is of legal age, single, a working mother, a resident and citizen of Sabana, Grande, Puerto Rico, and a citizen of the United States of America.  Vázquez was born in Puerto Rico.

12.     At all the relevant times of the facts alleged in this Complaint, Vázquez was an "eligible employee" within the definition of such term as defined under the FMLA, 29 U.S.C. § 2611(2)(A), of Defendant One to Seven, Inc.  Vázquez is also an employee under the definition of such term as provided by the laws of the Commonwealth of Puerto Rico that have been invoked herein.

13.     Defendant One to Seven, Inc. is upon information and belief a corporation duly organized and operating under the laws of the Commonwealth of Puerto Rico.

14.     On or about March 16, 2001, Defendant One to Seven, Inc., was incorporated under the laws of the Commonwealth of Puerto Rico.  Defendant One to Seven, Inc.'s Corporate Registry Number is 119093 and its corporate office headquarters are located at 145 El Tuque Industrial Park Ponce, Puerto Rico 00728.

15.     Defendant One to Seven, Inc. is a corporation which sells various cleaning merchandise, including detergents and soaps for homes and personal use and as such is engaged in any industry affecting commerce.  One to Seven, Inc. is also considered a "person" within the meaning of the FMLA, 29 U.S.C. § 2611(4).

16.     Defendant One to Seven, Inc. is engaged in an industry affecting commerce within the meaning of FMLA.

17.     Defendant One to Seven, Inc. ("One to Seven") is also an "employer" within the meaning of FMLA 29 U.S.C. § 2611(4) and of all the Puerto Rico laws which have been invoked herein.

18.     Defendant Tomas Padilla is an employee of One to Seven and as such he is an "agent" and/or "employer" within the definition of such terms as provided by the Puerto Rico laws which have been invoked herein.  At all times relevant hereto, Padilla was the supervisor in charge of the operations of One to Seven's store located in Sabana Grande, Puerto Rico where Vázquez worked.

19.     Defendant Padilla is being sued in his official capacity under the federal laws that have been invoked herein as an agent of One to Seven, and in his personal capacity under the Puerto Rico laws which have been invoked herein. Padilla is liable in his personal capacity under Puerto Rico law for the sexual harassment he perpetrated against Plaintiff Vázquez. Rosario v. Distribuidora Kikuet, Inc., 2000 TSPR 193.

20.     Defendants ABC Insurance Companies are other insurance companies that have insurance policies, which always relevant hereto, were in full effect and cover the liabilities and/or unlawful acts which were committed by the defendants herein mentioned.  Plaintiff Vázquez is using the fictitious names of ABC because currently she does not know the real names of such insurance companies.  Once the real names become known, Plaintiff Vázquez will substitute those fictitious names with the real names of such party defendants.

21.     Defendants DEF are other parties that have engaged in unlawful acts against Plaintiff Vázquez.  Plaintiff is using the fictitious names of DEF because at this time she does not know the real names of such party defendants.  Once the real names become known, Plaintiff Vázquez will substitute those fictitious names with the real names of such party defendants.

22.     All Defendants have jointly participated in continuous acts of unlawful employment discrimination and retaliation against Vázquez on account of her gender/sex, and because Vázquez engaged in statutorily protected activity under the federal laws herein invoked and under the laws of the Commonwealth of Puerto Rico by voicing internal grievances with One to Seven Inc.'s personnel.

23.     All defendants are jointly liable for the damages caused to Plaintiff Vázquez.

### III.     FACTUAL NARRATIVE COMMON TO ALL CLAIMS

24.     On or about December 28, 2015, Vázquez handed in her resume to One to Seven's Store Manager seeking employment at its store located at Sabana Grande, Puerto Rico.

25.     After Vázquez handed her resume, she was summoned for a job interview on December 30, 2015 at One to Seven's main office headquarters located in Ponce, Puerto Rico.

26.     The following day, December 31, 2015, One to Seven requested from Vázquez to sign an employment contract so that she could begin to work the following week. Such work

contract was renewed for six months.  Vázquez was hired as a student working on a full-time basis.

27.    On January 3, 2016, Vázquez commenced working at One to Seven's store located at Plaza 1 in Yauco, Puerto Rico.  Her manager and immediate supervisor was Mr. Tomas Padilla.

28.    Vázquez remained working at One to Seven's store located in Yauco, Puerto Rico for two (2) years, four (4) months and eighteen (18) days as a general employee performing cashier and floor employee functions for twenty (20) hours per week.

29.    While working at One to Seven's Yauco, Puerto Rico store, Vázquez became pregnant and subsequently on January 6, 2018, she gave birth to her baby boy.

30.    As a result of her maternity, Vázquez requested to be transferred to the One to Seven's store located in Sabana Grande, Puerto Rico so that she could be closer to her home and to her mother, who was the only person who could help her take care of her baby boy. Vázquez also wanted to work closer to home, because her mother had been recently diagnosed with cancer.

31.    On May 19, 2018, Vázquez was notified by One to Seven that her transfer request to work at the Sabana Grande, Puerto Rico store had been approved and that she would commence working at the Sabana Grande, Puerto Rico store effective May 21, 2018.

32.    On May 21, 2018, Vázquez reported and started working at One to Seven's Sabana Grande store as a regular employee.  At that time, her manager and immediate supervisor was Giselle Claudio.

33.    While continuing to work at One to Seven's Sabana Grande store, during the month of August 2018, One to Seven commenced to train Vázquez so that she could be promoted to the position of Assistant Manager.

34.     While being trained as Assistant Manager, Vázquez informed supervisor Tomás Padilla that she could not occupy the position of Assistant Manager for a prolonged time because during the month of May 2019 she was to begin her practice for her Bachelor's Degree in Criminal Justice at the Guerrero penal institution located in Aguadilla, Puerto Rico.  This prevented her from being able to work during her work shifts as Assistant Manager at the Sabana Grande, Puerto Rico store because of the travelling distance between Aguadilla and Sabana Grande.

35.     Padilla then advised Vázquez that there would no problem and that Vázquez could continue with her Bachelor's Degree practice and that when the date arrived to commence such practice, Padilla would substitute her with another employee.

36.     Thereafter, Vázquez started working as an Assistant Manager working twenty-five (25) to thirty (30) hours per week.  As time continued to pass and the date upon which Vázquez was to commence her Criminal Justice practice was approaching and One to Seven had not sent or notified Vázquez with her work substitute for that period of time Vázquez was to be performing her practice, she decided to tender a letter of resignation as Assistant Manager dated January 18, 2019 to One to Seven, to be effective on January 19, 2019.

37.     Thereafter, One to Seven transferred Gisella Portalatín, who was an employee at One to Seven's store at Yauco Plaza 1, Yauco, Puerto Rico, to its Sabana Grande, Puerto Rico store because effective February 2, 2010, Giselle Claudio was being transferred to the Yauco Plaza 2 store, as a Manager and Vázquez and Portalatín would remain at Sabana Grande as two Assistant Mangers.  As such, Vázquez continued working at One to Seven.

38.     During the month of July 2019, Vázquez was promoted to the position of Store Manager of One to Seven's Store located in Sabana Grande, Puerto Rico and was assigned forty (40) hours of work per week at such position.  As Assistant Manager, Rosemary Torres was

assigned to the Sabana Grande Store working for thirty (30) hours per week and as Auxiliary, Yarelis Irizarry was assigned to work for twenty-five (25) hours per week.

39.     During early January 2020, the southwestern region of the Island of Puerto Rico was struck by several earthquakes and aftershocks of considerable magnitude.

40.     On March 15, 2020, the Governor of Puerto Rico issued a lockdown Executive Order due to the current COVID-19 pandemic which required the closing of several businesses.

41.     During the first week of the Governor of Puerto Rico's decreed lockdown, from March 15 to March 21, 2020, Vázquez only worked twenty-four (24) hours as the One to Seven was experimenting problems in opening the Sabana Grande store due to the Governor's Executive lockdown order.   During that workweek, One to Seven paid sixteen (16) hours to Vázquez for vacation leave, without her consent.

42.     Vázquez was paid for that first week of the government mandated lockdown on March 25, 2020.  When she verified her bank account during the week of March 25, 2020, she ascertained that she was paid for 40 hours of work.  Vázquez then proceed to call Mr. Rasheed, President of One to Seven so as to notify him that One to Seven had committed an error in its direct deposit because they had over compensated her in the amount equivalent to twenty six (26) hours of work.  However, Rasheed replied to Vázquez that there was no error committed in her direct deposit because One to Seven decided to liquidate several hours that she had accumulated for sick and vacation leaves.

43.     Vázquez then proceeded to grieve or complain to Mr. Rasheed that her employer could not do this without her consent.  One to Seven had not requested Vázquez' consent or authorization in liquidating such vacation and sick leave days.  Mr. Rasheed then replied that the

employee did not have to authorize such liquidation, but that the employer could perform this without the employee's consent.

44.    On March 31, 2020, Vázquez' Assistant Manager, Rosemary Torres informed Vázquez that she would not be reporting into work that day because she was feeling ill and that Torres' mother-in-law had passed away the day before and her death was due to the Coronavirus causing the current pandemic.

45.    Upon Torres notice to Vázquez involving Torres' mother-in-law's death and because Torres felt ill, Vázquez counseled Torres to stay at her home and that Vázquez would notify One to Seven's owner and supervisor, Mr. Rasheed Nafe Handam, so as to inform him as to this situation so that another employee could be assigned to assist Vázquez in the operation of the Sabana Grande store and to cover Vázquez for the next work day as it was her day off from work. Mr. Rasheed Nafe Handam then informed Vázquez that he would be sending somebody to help and to cover Vázquez during her day off.

46.    Shortly thereafter, Mr. Padilla contacted Vázquez to inquire as to what was happening at the store and the situation involving Rosemary Torres. Vázquez then proceed to advise Padilla as to the situation involving Torres and the Sabana Grande store.  During their conversation, Vázquez further informed Padilla that she did not wish to report to work at the Sabana Grande store because of the COVID pandemic, that she had a two year old son and that her mother had been diagnosed with cancer.  Vázquez further grieved to Padilla that One to Seven was not observing any health protocols, by not implementing social distancing for its clients, nor the wearing of face masks or having the customers clean their hands with disinfectants prior to entering the store.

47.     On March 31, 2020, Vázquez further grieved and voiced her concerns and engaged in statutorily protected activity by stating to management that she might get infected as there were no health safety protocols in place at the Sabana Grande store in light of the current COVID 19 pandemic.

48.     Vázquez further grieved or complained to Padilla that the Sabana Grande store was not implementing public health preventive measures that had been published by governmental and health authorities involving the COVID 19 pandemic.  Vázquez further grieved to Padilla that she had been instructed to only allow the entry to the store of three (3) customers at a time and only after having them disinfect their hands, but when Mr. Rasheed arrived at the store, he would allow the entry of many customers, without the disinfecting of their hands and without them wearing face masks.  Padilla then informed Vázquez that there would be no problem and that he was to talk to Mr. Rasheed as to this situation.

49.     Approximately fifteen (15) minutes after Vázquez engaged in statutorily protected activity by grieving/complaining to Padilla about the lack of health safety protocols geared to prevent the spread of COVID 19 at the Sabana Grande store, Padilla again communicated with Vázquez to inform her that the situation had been resolved and that at 2:00pm of that day, Mrs. Gisella Portalatín was to arrive at the store in order to substitute for Vázquez.

50.     Mr. Padilla then instructed Vázquez for her to hand over the keys of the Sabana Grande store to him so she could then proceed home. Before leaving the store, Vázquez proceeded to perform her routine paperwork, invoices and delivery of the Petty cash so as to leave everything in order.  Vázquez the proceeded to leave the store at approximately 2:30 pm.

51.     Upon her exiting the store, Vázquez phoned Mr. Rasheed so as to inform him that everything was ready and that she had left the Sabana Grande store and that Gisella Portalatín had remained in charge at the store.

52.     Without provocation, Mr. Rasheed proceeded to insult Vázquez and reprimanded her unjustly by stating that she could not leave the store, that she was abandoning her work. Rasheed's actions violated Vázquez' constitutional right to dignity.  Mr. Rasheed further called Vázquez "irresponsible," that she was good for nothing, that he had arrived at the store, that Vázquez was not there and that she had disappointed him after he had put his trust on her as Manager to the store.  Vázquez replied and informed Mr. Rasheed that all of her actions had been previously authorized by Padilla, yet Rasheed replied that Padilla had no authority to do what he did and that he was not in charge.

53.     Vázquez again informed Rasheed that Padilla was to inform him as to what had transpired and she had been authorized to do what she did and that Padilla was to inform Rasheed as to the particulars.  Yet Rasheed again stated that Vázquez was irresponsible and that he didn't care what Padilla had authorized here to do and he proceed to end the phone call.

54.     Thereafter, Vázquez decided to leave her mother's house and return to her place of work at the Sabana Grande store so she could explain in person to Mr. Rasheed and again voice her concerns and grievances as to what had happened and the lack of public health and safety protocols at the store in light of the COVID 19 pandemic.

55.     Once Vázquez arrived back at the Sabana Grande store, she proceeded to telephone Mr. Rasheed to inform him that she was outside the store and asked him to meet with him outside the store to explain to him in person what had taken place.  However, Mr. Rasheed angrily refused and scolded Vázquez stating that "I have nothing to talk about with you, you may

leave, that is what you decided, and you abandoned your work." Vázquez once again pleaded to Mr. Rasheed to come out of the store so that they can have a face-to-face conversation as to what had transpired earlier.

56.     Mr. Rasheed then proceed to walk outside the Sabana Grande store and approached Vázquez. While approaching Vázquez, Rasheed started yelling at her, raising his voice and began to insult and berate her claiming she was good for nothing and that she could not leave her workplace gesticulating with his hands. Vázquez replied that Mr. Padilla had authorized her to leave her worksite and go home, however, Rasheed stated that it was not Padilla's fault but hers.

57.     While distraught and crying, Vázquez pleaded with Rasheed stating that this situation was his misunderstanding. She then requested from Rasheed that she be allowed to go on sick or vacation leave, but he refused to answer her requests and continued insulting her and demanding that she prepare certain reports for those employees that didn't want to show up to work due to the COVID 19 pandemic. Rasheed requested that these personnel reports state that such employees had abandoned their jobs.

58.     Vázquez informed Rasheed that she would prepare the requested personnel reports but that she was not going to state that these employees had abandoned their jobs. Rasheed then replied to Vázquez to do as she wished and Rasheed left the premises in his vehicle.

59.     At around 3:00pm, Vázquez informed the employee in charge of what had transpired and that she has to prepare the personnel reports. She then went to the office and prepared the employee reports, including her own and Rosemary Torres'. At the end of each employee report, Vázquez indicated that these employees had not abandoned their jobs and that each would return

to work when circumstances allowed them to return.  Vázquez left the store at approximately 5:00pm.

60.     On April 1, 2020, Store Manager Gisella Portalatín sent Vázquez a message requesting from her that she had to talk with those employees that had left the store and that they had to write a letter explaining as to why they had left and that they had to sign the corresponding personnel report.

61.     Days later, One to Seven sent Giselle Claudio to the Sabana Grande Store to cover Vázquez' absence.  Giselle Claudio was the Manager of the One to Seven Store located at Yauco Plaza 2, in Yauco, Puerto Rico, but due to the recent earthquakes since such store suffered grave damages they had Claudio assigned to the Yauco Plaza 1 One to Seven store as a regular employee working between fifteen (15) to twenty (20) hours per week.

62.     On April 9, 2020, Vázquez sent a text message to Mr. Padilla informing him that she would be returning to work on April 15, 2020 and requested from him that he also inform Mr. Rasheed of her return to work. Padilla responded that she could return to work but requested that she notify and call Rasheed as well.  Vázquez communicated with Rasheed but he replied that he was on another important call and that he will call her later, but he never did.

63.      On April 13, 2020, Vázquez once again attempted to telephone Mr. Padilla and Rasheed, but they did not respond.  She then sent text messages informing them that she had called them but they had not responded and that she had had no contact with either of them. Mr. Padilla was the only one that replied and informed her that he had her work schedule for the following workweek starting on April 20, 2020.

64.     On April 16, 2020, Mr. Padilla sent Vázquez a text message requesting from her to get in touch with him.  As instructed, Vázquez then proceeded to call Padilla who requested from

her to return to work the following week assisting Giselle Claudio, who was the new Store Manager, with a fifteen (15) to twenty (20) hours per week schedule.  However, Giselle Claudio, who substituted Vázquez as Store Manager, was assigned a regular forty (40) hour workweek schedule.

65.    In fact, Vázquez was demoted in rank and her workweek hours were reduced in retaliation because she had engaged in statutorily protected activity by grieving about One to Seven's failure to abide by public health protocols and because she had requested leave of absence due to her mother's cancer so that she could take care of her baby boy, conditions related to the COVID 19 pandemic.

66.    Vázquez inquired from Padilla as to why she had been demoted and was placed on a reduced workweek schedule because she had also requested a leave of absence from her work due to the pandemic.  Vázquez further grieved to Padilla that she was being the victim of unlawful retaliation.   Padilla then advised her that such personnel decisions affecting Vázquez' employment were made by Mr. Rasheed and that if she had any doubts that she should communicate directly with him.

67.    Thereafter, Vázquez proceeded to communicate with Mr. Rasheed to inquire about her demotion and removal from the Store Manager position and her reduction of her weekly work hours from forty (40) down to fifteen (15) to twenty (20) hours.   In so doing, Vázquez once again engaged in statutorily protected activity be grieving to Rasheed about her demotion and reduction in weekly working hours.

68.    Mr. Rasheed responded to Vázquez' inquiry and grievance by stating that this was a business decision and that this demotion and reduction in weekly working hours was not her problem.  Rasheed informed Vázquez that she had to report to work on the requested work shift

Complaint
Vázquez v., One to Seven, *et al.*
Page 15 of 23

and reprimanded her by saying that she must refrain from asking as to the reasons of the decisions that affected her.

69.    Rasheed further stated to Vázquez that Giselle Claudio had served as a Store Manager for more time than her, that Claudio deserved that position, that Vázquez had abandoned her employment and that he didn't trust her.  Rasheed then proceeded to terminate the phone call with Vázquez.

70.    Vázquez then communicated with Claudio to request her work shift and Claudio advised her that she didn't have them and would be informing her later on.

71.    On April 17, 2020 at approximately 10:48 am. Vázquez once again contacted Claudio through a text message asking for her work schedule but Claudio failed to respond.  At 3:45 pm., Vázquez called the store to once again request her work shifts and Claudio responded that she had forgotten and that she would immediately send her the work shifts.  At 3:52 pm., Vázquez texted Claudio to remind her that she had not received the assignment of her work shift but Claudio failed to respond.  Later that day, Claudio informed Vázquez of her work shifts but she noticed that they had only assigned her twenty three (23) hours of work for the workweek.

72.    On April 20, 2020, Vázquez reported in to work at 1:00 pm for her assigned work shift until 5:00 pm.  When Vázquez arrived at the store she found Gisella Portalatín had been assigned Store Manager, because Giselle Claudio was having lunch.

73.    Portalatín then proceeded to give the Assistant Manager's keys to the store to Vázquez.  Portalatín then informed Vázquez that she is leaving because her work shift had ended.  While Portalatín was leaving the store, Giselle Claudio entered and asked for the keys to the store.  Portalatín then replied that she had given the store keys to Vázquez because she was leaving and Vázquez had just started her work shift.  Claudio then answered that the store keys

can only be kept by Claudio or Portalatín.  Vázquez then gave the store keys to Claudio and then went to set up merchandise within the store.  During that date, Vázquez was not given any instructions from the Store Manager as to what duties she had to perform during her work shift.

74.     On April 23, 2020, Vázquez was assigned the 10:00 a.m. to 2:00 p.m. and 3:00 p.m. to 5:00 p.m. work shift.  When Vázquez arrived at the store at 9:45 a.m., Manager Claudio in a hostile way demanded that Vázquez let go of her purse and ordered her to set up a cat food stand immediately, to which Vázquez responded that her work shift had not yet commenced and that as soon as her work shift started, she would comply.  However, Claudio became upset.

75.     At around 4:00 p.m. of April 23, 2020, Claudio informed Vázquez that Mr. Rasheed had instructed that those employees that had been absent due to the COVID 19 pandemic, had to test themselves for that virus.  Vázquez then responded that if the employer wanted to conduct such test, then One to Seven should assume the costs of such examination.

76.     Claudio then warned Vázquez that those were Mr. Rasheed's instructions and that if she refused to take the COVID 19 test, she would be disciplined.

77.     On April 24, 2020, Vázquez had to report to work as Assistant Manager from 8:00 a.m. until 1:00 p.m. because the Store Manage was to arrive at 9:00 a.m.  Vázquez arrived at approximately 7:35 a.m. and stayed in her car until it was time to clock in.  However, Claudio arrived at 7:42 a.m. When Vázquez opened the store at 8:00 a.m., Claudio left her car and walked to the store.  Vázquez then asked Claudio why she had arrived earlier when she was scheduled to commence work at 9:00 a.m. and Claudio responded that she had been instructed to arrive at 8:00 a.m.

78.     On that same day at 11:12 a.m., Mr. Rasheed sent out a memorandum to One to Seven's employees using WhatsApp that the company had in relation to Absences involving

COVID-19.  Such memorandum stated that every employee that was absent to work was required to submit recent evidence that such employee had taken the test for COVID-19 and that if such instructions were not followed they would be subject to disciplinary action.

79.     On April 25, 2020, Vázquez reported for her work shift from 1:00 p.m. to 5:00 p.m. At around 4:40 p.m., Vázquez inquired from the Store Manager where the payroll was in order to sign it.  At 4:50 p.m., Vázquez once again requested form the Store Manager where the payroll was in order to sign it.  When Claudio gave Vázquez her payroll, Vázquez observed that she only had twenty one (21) hours that Assistant manager Gisella Portalatín had thirty (30) hours and that Claudio had forty (40) hours of work assigned.  Vázquez then asked why she was being retaliated against for having returned back to work by being assigned lesser hours of work during her work shift, yet Claudio responded that was the employer's decision.

80.     During the workweek from May 10 to May 16, 2020, One to Seven liquidated and paid Vázquez forty (40) hours of vacation she had previously accumulated.  During the following week of May 17 to May 23, 2020, One to Seven then liquidated and paid twenty (20) hours she had of vacation leave.  This liquidation of her vacation time was done without her consent.  She had previously requested her vacation time for the week starting April 1, 2020.  She had been out of her place of employment for twenty (20) days and she was not compensated with any leave by One to Seven which was mandated by the Families First Coronavirus Response Act of 2020 and the Emergency Family and Medical Leave Expansion Act ("EFMLEA")

81.     On Thursday May 28, 2020, immediately after commencing her work shift, Vázquez received a call from her mother that her great grandmother had just died.  Vázquez then informed Store Manager Giselle Claudio that she had to leave immediately due to such situation because

her son was with her mother at her house and that her great grandmother was in the house when she died.  Claudio then authorized Vázquez to leave.

82.     Thereafter, Vázquez returned to work that day at 12:00 p.m. and continued working until the end of her shift at 3:00 p.m. At the end of Vázquez' shift, she was informed by Claudio that supervisor Tomas Padilla had informed that according to law she could take a three (3) day bereavement leave with pay.  Vázquez inquired as to whether this information was correct because she needed her income.  She was advised that she could and what she only needed was the corresponding death certificate.

83.     On May 30, 2020, Vázquez obtained her great grandmother's death certificate and gave it to the Store Manager.  On June 3, 2020, Vázquez received her salary but became aware that they only compensated her with eleven (11) hours of work as opposed to the twenty (20) hours of work she was represented that she would be compensated with.  After Vázquez grieved to the Store Manager, Claudio phoned One to Seven's headquarters and they stated that Vázquez was not entitled to the paid three (3) days because Vázquez was not a full time regular employee and had not worked a forty (40) hour workweek.

84.     Vázquez then proceeded to grieve and in so doing, engaged in statutorily protected activity because Tomas Padilla had so advised her that she could have this bereavement leave with pay benefit.

85.     On July 6, 2020, Vázquez was constructively discharged as she was forced to resign her employment with One to Seven.  On July 6, 2020, Vázquez submitted her forced resignation letter to One to Seven.

86.     Vázquez was forced to resign as an employee of One to Seven because she was the victim of multiple retaliations by her employer and its agents against her after she had on

Complaint
Vázquez v., One to Seven, *et al.*
Page 19 of 23

several occasions grieved and complained due to her employer's failures to implement health and preventive measures, such as social distancing among employees and One to Seven customers, disinfecting of hands and wearing facial masks related to the COVID-19 pandemic, measures that were promoted and required by public health authorities.

87. Vázquez was further forced to submit her resignation letter and constructively discharged because she requested from her supervisor those work related licenses and paid benefits established by the recently enacted federal laws, Emergency Paid Sick Leave Act (EPSLA0, Emergency Family and Medical Leave Expansion Act and the Families First Coronavirus Response Act (FFCRA).

88. The EPSLA provisions of the FFCRA require private employers with less than 500 employees to provide paid sick leave for employees having to take time off for certain Coronavirus related reasons.

89. After Vázquez requested payment of her leave authorized by such federal laws and having grieved about her employer's violation to public health protocols established as a result of the COVID-19 pandemic, One to Seven significantly reduced her work time from mid-April until the date she was forced to resign from her employment.

90. In retaliation for engaging in the above stated statutorily protected activities, Vázquez was further demoted in rank and her work time was reduced. Giselle Claudio was named Manager while Vázquez was demoted to Assistant Manager. Such demotion and reduction of work hours was in retaliation because Vázquez had engaged in the previously stated statutorily protected activities and after she requested to be placed on leave for two weeks due to the COVID-19 pandemic so she could take care of her minor two year old child.

91.     Vázquez was further forced to resign her employment at One to Seven because she was the victim of unwelcomed sexual harassment at the place of her employment which created a hostile and offensive working environment for Vázquez.  Such unwelcomed sexual harassment was a result of the sentimental relationship between Manager Giselle Claudio Jusino, who replaced Vázquez as Store Manager, with Mr. Tomas Padilla Muñiz, who supervised the operations of One to Seven's Sabana Grande, Puerto Rico store.

92.     Padilla was the One to Seven's agent that removed and demoted Vázquez from her position as to Store Manager to Assistant Manager with the a reduction in working hours.  The hostile, offensive and abusive hostile working environment negatively affected Vázquez' terms and conditions of employment and has caused her emotional and economic damages.  Vázquez' dignity as a women has also been violated.

## I.     FIRST CAUSE OF ACTION

**(Violations of Families First Coronavirus Response Act of 2020 ("FFCRA"), Emergency Family and Medical Leave Expansion Act ("EFMLEA"); Family Medical Leave Act ("FMLA"); Fair Labor Standards Act ("FLSA")**

93.     Vázquez re-alleges each preceding allegation as if fully set forth herein and incorporates them hereto by reference.

94.     Defendants have willfully violated FFCRA, EFMLEA, FMLA and FLSA's VII's provisions by engaging in discriminatory employment and retaliatory practices against Vázquez on account of her engagement in statutorily protected rights guaranteed under such federal laws.

95.     Defendants failed to compensate Vázquez with the mandated paid leaves established under these federal laws. As such, defendants are jointly liable in compensatory damages against Plaintiffs for their unlawful conduct.

96.    Plaintiff Vázquez hereby requests back pay for that period of time that she was without work as a result of Defendants' discriminatory and retaliatory practices.  Vázquez further requests front pay and punitive damages.

## II. SECOND CAUSE OF ACTION
### (FMLA and Puerto Rico Act 115 Retaliation)

97.    Plaintiff Vázquez re-alleges each and every preceding allegation as if fully set forth herein and incorporates them by reference hereto.

98.    Defendants have willfully violated FMLA's provisions by engaging in discriminatory employment practices against Plaintiff Vázquez on account of her conditions involving the COVID 19 pandemic and in retaliation because she engaged in statutorily protected activity.  As such, defendants are liable in compensatory damages against Plaintiff Vázquez for their unlawful conduct.

99.    Plaintiff Vázquez hereby requests back pay for those periods that she was without work as a result of Defendants' discriminatory practices.  Vázquez further requests front pay and punitive damages.

## III.   THIRD CAUSE OF ACTION
### (FMLA violation)

100.    Plaintiff Vázquez re-alleges each and every preceding allegation as if fully set forth herein and incorporates them by reference hereto.

101.    Defendants have jointly violated Plaintiff Vázquez's rights secured under the FMLA.

102.    Plaintiff Vázquez is entitled to compensatory damages, back pay and front pay.  Plaintiff has suffered considerable economic and personal damages as a result of Defendants' conduct.  Plaintiff is further entitled to punitive damages.

## IV. FOURTH CAUSE OF ACTION
### (Violation of Puerto Rico Constitutional Rights)

103.    Plaintiff Vázquez re-alleges each and every preceding allegation as if fully set forth herein and incorporates them by reference hereto.

104.    Defendants have jointly violated Plaintiff Vázquez' rights secured under Article II, Sections 1, 8, 16 and 20 of Puerto Rico's Constitution by violating her dignity, privacy, reputation, health at the work place and discriminating against her on the basis of her gender.

105.    Plaintiff Vázquez is entitled to compensatory damages, back pay and front pay. Plaintiff Vázquez has suffered considerable economic and personal emotional damages as a result of Defendants' conduct.

## V.   FIFTH CAUSE OF ACTION
### (Violation to Puerto Rico Laws Nos. 180, 115, 100, 80, 69, and 17)

106.    Plaintiff Vázquez re-alleges each and every preceding allegation as if fully set forth herein and incorporates them by reference hereto.

107.    Defendants have violated Plaintiff Vázquez' rights secured under Puerto Rico Laws Nos. 180, 115, 100, 80, 69, and 17, previously cited to herein.  Defendants have discriminated against Plaintiff Vázquez on account of her sex (gender and sexual harassment), and further created a hostile, abusive and offensive working environment which altered her terms and conditions of employment and in retaliation for having engaged in statutorily-protected conduct. Defendants have also forced Vázquez' forced resignation or constructive discharge without just cause in violation to Puerto Rico Act No. 80 of May 30, 1976, 29 L.P.R.A. §§ 185a-185, as amended.  As such, Plaintiff Vázquez is entitled to an Act 80 compensation.

108.    As to Puerto Rico Act 180, Defendants liquidated her vacation and sick leave balances without Plaintiff Vázquez' consent.

Complaint
Vázquez v., One to Seven, *et al.*
Page 23 of 23

109.   Plaintiff Vázquez is entitled to compensatory damages, back pay and front pay.

Plaintiff has suffered economic and personal damages as a result of Defendants' unlawful

conduct.

**WHEREFORE**, premises considered, Plaintiff prays that this Honorable Court enter

Judgment against defendants and grant Plaintiff the following relief:

(a)   An award of compensatory damages, including but not limited to back pay, front pay and prejudgment interests, of not less than $2,000,000.00;

(b)   An award of double compensatory damages under Laws Nos. 115, 100, 69 and 17;

(c)   An Act 80 award due to Vázquez' constructive discharge

(d)   An award of costs and reasonable attorney's fees; and punitive damages;

(e)   Injunctive relief ordering Defendants to stop retaliating against Plaintiff;

(e)   An award for punitive damages;

(f)   Any other and further relief, which this Court may deem just, and proper.

(g)   A trial by jury.

(h)   A declaratory judgment declaring that Defendants have  willfully, unreasonably, wrongfully, and without good faith, violated their statutory and legal obligations, and deprived Plaintiff Vázquez of her rights, protections and entitlements under federal law, as alleged herein.

In San Juan, Puerto Rico, this 8th day of September 2020.

**RESPECTFULLY SUBMITTED.**

**/s/ MANUEL E. LOPEZ FERNANDEZ**
**USDC PR NO. 205507**
**Attorney for Plaintiff**
B-12 Paseo del Prado
San Juan, PR 00926
Tel.: (787) 562-2040
email: lcdomanuel.lopez@gmail.com;
manrique.lopez@hotmail.com

**/s/ JOSÉ G. FAGOT DÍAZ**
**USDC PR No. 204112**
**Attorney for Plaintiff**
166 Presidente Ramirez St.
Apt. No. 2, Urb. Baldrich
Hato Rey, PR 00918
Tel.   (787) 367-8702
email: jgf@fagot-law.com
josegabrielemilio@gmail.com